456 So.2d 992 (1984)
James C. STEELE, III and Gloria Dyke Steele
v.
Eloise S. DENNING, et al.
No. 84-C-0576.
Supreme Court of Louisiana.
September 20, 1984.
*994 Harvey Perry, Monroe, for plaintiffs-applicants.
Daniel T. Murchison, Raymond Arthur, Watson, Murchison, Crews, Arthur & Corkern, Natchitoches, R. Wayne Smith, Ruston, for defendants-respondents.
CALOGERO, Justice.
The legal issue presented for our consideration in this case concerns whether a person who owns an undivided interest in land, without the attendant mineral rights (because the land is subject to a mineral servitude), has a right to petition for the partition by licitation of all of the land and the mineral rights.
The facts involved in this case are not in dispute, and are essentially as follows. Two tracts of land in Lincoln parish are involved. At one time, the two tracts were owned by a single owner, but through inheritance and various transfers, they are now held in indivision in various percentages by 27 co-owners. Plaintiffs James C. Steele and his wife Gloria Steele obtained their (approximate) 1/5th interest in each of the two tracts of land without the attendant mineral rights, those mineral rights having been reserved to the vendor, Sherwood I. Burgdorf, when he sold his undivided 1/5 interest in the property to the plaintiff Steeles' ancestors in title in 1978. Thus, plaintiffs own no mineral interests in the property. The property is burdened only by this mineral servitude in favor of Burgdorf. All of the remaining co-owners of the other undivided interests in the property (defendants Denning, et al) own the mineral rights attendant to their respective interests in the land.
The entire property is burdened by a mineral lease in favor of Getty Oil Company, derived from all of the co-owners. The property is under production, with the mineral lessors receiving royalties.
Plaintiffs filed this lawsuit seeking a partition by licitation of the entire two tracts of land and the mineral rights.[1] Named as defendants were Burgdorf (owner of a mineral servitude on plaintiffs' property interest) *995 and Denning, et al (all the other co-owners of interests in the property).[2]
All defendants filed "Exceptions of No Cause or Right of Action." They argued that since plaintiffs own no interests in the minerals whatsoever, owning nothing in common with the mineral right owners, they have no right or cause of action to force the sale of the mineral rights by a partition by licitation.
The trial court overruled defendants' "Exceptions of No Right or Cause of Action." The case was tried on the merits and there was a judgment ordering a partition by licitation of the land and the mineral rights.[3]
All defendants appealed, contending that the trial court erred in overruling their exceptions of no cause and no right of action, for the reason that the plaintiffs, owning no interest in the minerals, have no right to provoke the partition of the mineral rights.
The Court of Appeal found merit in defendants' arguments and reversed the trial court judgment insofar as the court ordered partition included sale of the mineral rights to the property. The court reasoned, by analogy to the Civil Code articles on the partitioning of property subject to a usufruct, and the jurisprudence relative thereto, that plaintiffs held nothing in common with Burgdorf, who owned only a mineral servitude, nor any common interest with the other defendants in regard to the minerals. Absent common ownership of the thing (here the mineral rights), plaintiffs had no right to provoke the partition by licitation of the thing (the minerals). Steele v. Denning, 445 So.2d 94 (La.App. 2d Cir.1984).[4]
Plaintiffs applied to this Court for writs, arguing that the Court of Appeal erred by basing its decision on Civil Code articles and related jurisprudence, rather than looking to the Mineral Code. Plaintiffs contend the Mineral Code is clear and favors their position. Their argument persuaded us to grant writs. Steele v. Denning, 448 So.2d 109 (La.1984). However, after considering the briefs, oral arguments, the record and the applicable statutes, we find that the Court of Appeal was correct in its judgment.
As stated above, the only question presented for our consideration is whether a party, owning only an interest in indivision in land, and no interest in the mineral rights thereto, may provoke a partition by licitation of the mineral rights along with the land. Since this question concerns mineral interests, we turn first to the Mineral Code for guidance, as Article 2 of the Mineral Code provides:
The provisions of this Code are supplementary to those of the Louisiana Civil Code and are applicable specifically to the subject matter of mineral law. In the event of conflict between the provisions of this Code and those of the Civil Code or other laws the provisions of this Code shall prevail. If this Code does not expressly or impliedly provide for a particular situation, the Civil Code or other laws are applicable.
The articles applicable to the issue before us are found in Part 3 of the Mineral Code, entitled "Partition of Land and Its *996 Effect on Mineral Rights," and encompass ten articles, Nos. 178-187.[5] None of those articles, however, address the question of who has the right to initiate a partition action where land is burdened by a mineral right. Rather, the articles of the Mineral Code on partitioning land burdened by a mineral right address only the procedure which is to be followed, "[i]f land burdened by a mineral right ... is judicially partitioned." La.R.S. 31:178. The Mineral Code makes no reference to when or by whom a judicial partition may be sought. It presupposes the right to partition, as provided in the Civil Code, and only specifies the procedures to be employed in effecting the partition (i.e., "[i]f the owner of a mineral right or interest therein is made a party to an action for partition of the land subject to his right ...." La.R.S. 31:180).
The history of these Mineral Code provisions supports this view. As noted by the Comment to Mineral Code Article 179, "... Articles 179-187 are an integrated set of provisions redrafting Article 741 of the Civil Code...."[6] These Mineral Code articles on partitioning land burdened by a mineral right were taken from (and meant to replace) a Civil Code article which comprised *997 only a part of the entire codal scheme on partition. Former Article 741 of the Civil Code dealt with the procedures to be employed in effecting a partition, and did not deal with who had the right to bring the partition action. See 24 Tul.L.Rev. 288. Who may bring an action for partition was governed by other Civil Code provisions, particularly La.C.C. art. 1289. (Quoted infra at page 9.)
In accord with the above view, Mr. John M. McCollam, Assistant Professor of Law at Tulane University, who wrote the "Primer for the Practice of Mineral Law under the New Louisiana Mineral Code," 50 Tul. L.Rev. 729 (1976), states therein:
The articles of the [Mineral] Code dealing with the partition purport to apply to the right of a co-owner of the fee title to partition the co-owned land. The main emphasis, however, is on the effect of such partitions on existing mineral rights. The basic right to partition is granted by the Civil Code. (emphasis provided)
50 Tul.L.Rev. at 853.
Plaintiffs have cited us to no provision, and indeed there is none in the Mineral Code, which expressly provides that a party who owns only an interest in the land, without the attendant mineral rights, has a right to bring suit for partition by licitation of both the land and the mineral rights. As noted above, Article 2 of the Mineral Code provides that the Mineral Code is supplementary to the Louisiana Civil Code and where the Mineral Code does not provide for a particular situation, "the Civil Code or other laws are applicable." Since the question presented here, that is, whether a person who owns an undivided interest in land, without the attendant mineral rights, has a right to petition for the partition by licitation of all the land and the mineral rights, is not directly covered by the Mineral Code, we must look to the provisions of the Civil Code and related jurisprudence for the answer.
It is well settled that property may be held in indivision, that is, it may be owned jointly by more than one person, with no single person owning any particular part of the property, rather, each owning an interest in the whole. As early recognized by this Court, co-owners of land "are owners par mi et par tout, of part and of the whole. Neither of two co-owners has the exclusive right to any determinate part of the common property." Gulf Refining Co. v. Carroll, 145 La. 299, 82 So. 277 (1919). And, with certain exceptions not pertinent here,[7] each owner has the right to oppose the use of the property by the other. This principle was grounded in the Roman law, as observed by our Court in Gulf Refining Co., supra 82 So. at p. 278:
According to Sabinus one of the co-owners of a thing in common can do nothing (in re) in or concerning the thing (invito altero) against the will of, or in opposition to, the other. Hence, it is manifest that this other has the right to prohibit the doing of anything, for it is certain that the right of that one of the owners who makes opposition is the stronger.
The Court in Gulf Refining Co., supra, also noted that French law contains the same doctrine. Consequently, when co-owners cannot agree upon the use of their property, partition is the relief provided by the Civil Code. In that regard, La.C.C. art. 1289 provides:
No one can be compelled to hold property with another, unless the contrary has been agreed upon; any one has a right to demand the division of a thing held in common, by the action of partition. (emphasis provided)
However, under the above provision, a demand for partition will be dismissed if the determination is made that the "thing" is not in fact "held in common." Thus, the narrow question presented *998 for our consideration by the facts of the instant case is whether, in an action to partition mineral rights, plaintiffs, who own an interest in land, without the concomitant right to explore for minerals and reduce them to possession and ownership (because that land is burdened by a mineral servitude in favor of defendant Burgdorf), hold a thing "in common" with defendant Burgdorf, the owner of the mineral servitude, or defendants Denning, et al, the full interest co-owners who own the right to explore for minerals.
As correctly observed by the Court of Appeal, there is no question in our law today but that one who holds an interest in property as a naked owner does not hold a thing in common with one who holds an interest in that property as a usufructuary. And, accordingly, neither has the right to provoke the partition of the other's rights in the property. La.C.C. art. 543; La.C.C. art. 1289; Smith v. Nelson, 121 La. 170, 46 So. 200 (1908).
Smith v. Nelson, supra, is the leading case on what is meant by "holding in common," under La.C.C. art. 1289. Although it involved the naked owner/usufructuary situation, the principles announced relative to partition generally are important here. The Court stated:
The law which confers the right to the partition of a "thing held in common" has no application to those who hold, respectively, the fragments of a dismembered title to the same immovable property, for the reason that in such case, the title being dismembered, each part is a distinct thing, held by a different owner, and there is no "thing held in common."
As pertinent to the issue before us, the inquiry is whether these same principles, concerning what is meant by "holding in common" in terms of a naked ownership interest and a usufructuary interest, apply as between an owner of surface rights in property and the owner of the mineral rights.
Professor Harriet Spiller Daggett, former Professor of Law at Louisiana State University, in her book on Mineral Rights in Louisiana seemed to be of the view that it does, quoting Marcadé approvingly:
... every servitude, is called a jus in re, a right in the thing. "Jus in re" and "dismemberment of property" are synonymous expressions ....
H. Daggett, Mineral Rights in Louisiana 20 (1949).
And, indeed, in Amerada Petroleum Corporation v. Reese, 195 La. 359, 196 So. 558 (1940) this Court quoted the above passage from Smith v. Nelson, applying those principles to a situation involving mineral rights. Therein the Court found neither a right in the mineral lessee to institute a partition proceeding against the lessor, nor a right in the lessor to institute a partition proceeding against the mineral lessee.
An owner of a mineral servitude is an owner of an incorporeal immovable (La.R.S. 31:18), a real right. La.R.S. 31:16. "A mineral servitude is the right of enjoyment of land belonging to another for the purpose of exploring for and producing minerals and reducing them to possession and ownership." La.R.S. 31:21. And it is a dismemberment of the title insofar as it creates a secondary right in the property separate from the principal right of ownership of the land.
Plaintiffs are quick to point out that we do not recognize (as does the common law) a separate estate in minerals. And they are certainly correct on this point. In fact, this Court so ruled for the first time in 1913, in the unreported case Wadkins v. Atlanta & Shreveport Oil & Gas Co., No. 19315, and more notably in Frost-Johnson Lumber Co. v. Salling's Heirs, 150 La. 756, 91 So. 207 (1922). This is also the adopted position of the Mineral Code. La. R.S. 31:6.
That does not, however, change the fact that the creation of a mineral servitude effectively fragments the title such that different elements of ownership are held by different owners (i.e., between the landowner and the mineral servitude owner), and there is not any "thing held in *999 common" between them. Defendant Burgdorf, a mineral servitude owner, and all of the other defendants herein, own the right to explore for minerals and reduce them to possession and ownership. La.R.S. 31:21. Plaintiffs own only an interest in the land, specifically without the right (in common with defendants) to explore for minerals and reduce them to possession and ownership.
Moreover, this conclusion has been adopted in the Mineral Code, as Mineral Code article 169 most pointedly provides:
Co-ownership does not exist between the owner of a mineral right and the owner of the land subject to the right or between the owners of separate mineral rights.
In summary, the right to partition, established by La.C.C. art. 1289, is limited to those who hold a thing in common. In the situation presented here, between plaintiffs, the owners of the land subject to a mineral servitude, and defendant Burgdorf, a mineral servitude owner, plaintiffs hold nothing in common with Burgdorf. Similarly, plaintiffs hold nothing in common with defendants Denning, et al, as concerns their interests in the mineral rights to the property. Consequently, plaintiffs have no right to a judgment, in these proceedings, ordering the partition of the mineral rights to the property in question.
Plaintiffs' principle argument is that the Mineral Code makes provision for the partition by licitation of the minerals where there is a partition by licitation of the land, provided only that the mineral right owner be made a party to the partition proceedings. They rely on Mineral Code Articles 178-187 in support of this argument. That argument, however, is not persuasive, for the Mineral Code does not create the right to institute a partition action. Rather, it is the Civil Code which creates the right. The Mineral Code merely deals with the procedure for partitioning mineral rights where the right to do so is otherwise provided for. Where there is such a right, plaintiffs are correct that the Mineral Code provides that the mineral rights may be partitioned with the land if the mineral right owner is made a party to the action.[8]
Plaintiffs, in this case, whose entire undivided interest in 2 tracts of land is burdened by a mineral servitude, do not hold in common, with either defendant Burgdorf or defendants Denning, et al, any mineral interests. Thus, they have no right to provoke the partition of the mineral rights along with the land.

Decree
Accordingly, the Judgment of the Court of Appeal is affirmed.
AFFIRMED.
DIXON, C.J., concurs.
NOTES
[1] Essentially, there is no dispute as to whether plaintiffs are entitled to a partition by licitation or simply a partition in kind. If plaintiffs are entitled to a partition at all in this case, the parties concede, it is by licitation. See La.R.S. 31:178 and La.C.C.P. art. 4621.
[2] Getty was later added as a defendant. Getty answered, seeking recognition, and maintenance in force, of its mineral lease. The trial court ruled, favorably to Getty, that the property would be partitioned subject to the mineral lease. That portion of the trial court judgment was not appealed and is not before us now.
[3] Of course, in compliance with the Mineral Code, the trial court also ordered the appropriate appraisals, separately, of the land and the minerals. La.R.S. 31:180-183. We are not concerned with this aspect of the judgment. The question before us is simply whether a partition of the minerals can be ordered at all, on the petition of these plaintiffs.
[4] The question of whether plaintiffs had the right to provoke the partition by licitation of the land was not raised by any of the parties in this case. Thus, neither the Court of Appeal opinion or any discussions by this Court relate to that aspect of the case. However, it might be noted by analogy to La.C.C. art. 543 that there may be some question as to whether these plaintiffs had such a right, since all the other co-owners also owned the respective mineral rights to their interests in the property.
[5] Article 178 of the Mineral Code:

If land burdened by a mineral right or rights created by fewer than all of the co-owners of the land is judicially partitioned, a partition in kind may not be ordered unless it can be accomplished in such fashion that the allocation of tracts to the co-owners assures that both surface and mineral values of each tract are in the same proportion to the total value of the surface and the mineral rights respectively as each co-owner's interest bears to the whole of the surface and the mineral rights respectively and that partition in kind will not significantly impair the ability of any owner subject to the partition to develop the minerals on his own tract.
Article 179 of the Mineral Code:
The owner of a mineral right or interest therein is a necessary party to an action for partition of the land subject to his right. If the owner of a mineral right or interest therein is not made a party to such an action, the partition is not invalid, but the right or interest therein is not extinguished or otherwise affected.
Article 180 of the Mineral Code:
If the owner of a mineral right or interest therein is made a party to an action for partition of the land subject to his right and it is determined that the partition is to be by licitation, the court shall appoint two appraisers who shall separately value the interest in the land or the mineral rights of each party to the action who is or may be entitled to participate in the proceeds of the sale.
Article 181 of the Mineral Code:
A copy of the appraisal shall be served upon each party to the action together with a notice that the appraisal may be homologated after the expiration of fifteen days from the date of service.
Article 182 of the Mineral Code:
An opposition to the appraisal may be filed by any party to the action at any time before homologation and shall be tried as a summary proceeding.
Article 183 of the Mineral Code:
When the owner of a mineral right or interest therein is entitled to participate in the proceeds of the licitation, the court shall order that the proceeds be distributed in the proportion that the homologated value of the interest of each party who is entitled to participate in the sale bears to the total homologated value of all of the interests of all of the parties.
Article 184 of the Mineral Code:
If an appraisal of any mineral right or interest therein is not made as herein required, the partition is not invalid, but the right or any interest therein is not extinguished or otherwise affected.
Article 185 of the Mineral Code:
Except as provided in Articles 186 and 187, the owner of a mineral right or an interest therein appraised in accordance whith these articles is entitled to participate proportionally in the proceeds of the licitation, and his interest is extinguished by the sale.
Article 186 of the Mineral Code:
If the rights of an owner of a mineral right or rights or interest or interests therein derive from all of the co-owners of the land, whether by single or separate acts, his rights are unaffected by the licitation, and he has no interest in the proceeds of the sale.
Article 187 of the Mineral Code:
If the whole of the land is adjudicated to the party who created a mineral right or to his successor, the right is not extinguished or otherwise affected and the mineral right owner has no interest in the proceeds of the sale. In such cases, the party to whom the land is adjudicated is entitled to a credit on the total purchase price equal to the proportionate value of the mineral right or interest therein.
[6] The reference to La.C.C. art. 741 here, is to that article prior to its amendment in 1977 by Act No. 514.
[7] For example, this rule does not apply where one co-owner is using the property to prevent waste or destruction. See La.R.S. 31:176.
[8] Plaintiffs' argument would be correct, for example, in this case, if a full owner of an undivided interest in the property, like Denning, had brought the partition action. Denning, being a full owner of the land (with the attendant mineral rights), holds elements of ownership in both the land and the mineral rights, and thus, owns "a thing held in common" with all of the other co-owners. As such, unlike plaintiffs here, she has the right to petition for partition by licitation of both the land and the mineral rights. Patrick v. Johnstone, 361 So.2d 894 (La. App. 2d Cir.1978). And then, "if ... the land is judicially partitioned" (La.R.S. 31:178), with the mineral right owner being made a party to the partition action (La.R.S. 31:179 & 180), and the appropriate appraisals are made in accordance with law (La.R.S. 31:180-184), the mineral right owner will share in the proceeds in proportion to the value of his interest (La.R.S. 31:183) and his mineral rights would be extinguished by the sale of the property resulting from the partition action. La.R.S. 31:185.